IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-577-FL

| | |
|---|---|
| JEFFREY GREENWELL,  )<br>  )<br>         Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>GROUP HEALTH PLAN FOR  )<br>EMPLOYEES OF SENSUS USA, INC.; and  )<br>BLUE CROSS BLUE SHIELD OF NORTH  )<br>CAROLINA,  )<br>  )<br>         Defendants.  ) | ORDER |

This matter is before the court on defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 58, 62). The motions have been briefed fully, and the issues raised are ripe for ruling. For the following reasons, defendants' motions are granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff commenced this putative class action on July 19, 2019, in the United States District Court for the Northern District of Texas,[1] asserting claims under the Employee Retirement Income Security Act of 1974 ("ERISA") arising out of defendant Blue Cross Blue Shield of North Carolina's ("Blue Cross") denial of coverage for plaintiff's claim for medical treatment under his group healthcare plan and defendant Blue Cross's policy. Plaintiff brings the action on behalf of himself and all putative class members who had also been denied coverage for the same type of

---

[1] On December 17, 2019, the parties jointly moved to transfer the case to the United States District Court for the Eastern District of North Carolina and that motion was granted on December 20, 2019. (See (DE 30, 30-1, 32)).

medical treatment under that policy. Plaintiff seeks damages, individually and for the putative class, to recover benefits due to them under the terms of their plans, and injunctive, declaratory, and other equitable relief along with attorney's fees. Specifically, plaintiff seeks, on behalf of himself and the putative class, an order declaring defendant Blue Cross's practices violate its ERISA duties, an order requiring defendant Blue Cross to reprocess all allegedly incorrect claim denials, and disgorgement of all profits retained as a result of the wrongful denials.

Defendant Group Health Plan for Employees of Sensus USA Inc. ("Group Health") filed the instant motion to dismiss on March 16, 2020, and defendant Blue Cross filed the instant motion to dismiss on March 17, 2020, on the basis that the complaint fails to state a claim upon which relief can be granted.[2] Defendants rely on a document labeled "Notice of Final Internal Adverse Benefit Determination" and a document labeled "Notice of External Review Determination." (Mem. Supp. Mot. Dismiss Exs. 1, 2, (DE 63-1, 63-2)). Plaintiff responded in opposition on April 20, 2020, and defendants replied on July 28, 2020.

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. In June 2015, plaintiff was diagnosed with prostate cancer and was advised to undergo proton beam radiation therapy ("proton therapy"), a newer, more expensive, but more effective radiation-based cancer treatment, as opposed to intensity modulated radiotherapy ("radiotherapy"), a traditional, less expensive radiation-based cancer treatment. This recommendation was based on both the post-treatment quality of life and lower risk of radiation-based side effects associated with proton therapy, which have allegedly resulted in the medical community finding proton therapy to be "a generally

---

[2] Defendant Group Health states that it "adopts and incorporates [Blue Cross's] Motion to Dismiss and Memorandum in Support in its entirety and moves for dismissal as set forth in same" (Mem. Supp. Mot. Dismiss (DE 59) 2); therefore, the court discusses only defendant Blue Cross's arguments throughout.

accepted standard of medical practice for the treatment of prostate cancer." (Compl. ¶¶ 21, 26, 48). Plaintiff sought prior approval from defendant Blue Cross for proton therapy for his prostate cancer under his health insurance plan, a group health insurance plan ("Plan"), sponsored by his former employer, Sensus USA Inc. Blue Cross administers the Plan, makes coverage and benefit determinations under the Plan, and provides payment under the Plan to plan participants. On March 30, 2016, defendant Blue Cross denied the prior approval request on the basis that proton therapy did not meet the Plan's definition of medical necessity as it fell under the coverage exclusion for investigational services as further outlined in defendant Blue Cross's "Corporate Medical Policy: Charged Particle Radiotherapy (Proton or Helium Ion) Investigational (Experimental Services)" ("Corporate Medical Policy"). (Compl. ¶¶ 6, 49); (see also Compl. Ex. B, (DE 1-3))[3].

As relevant here, the Benefit Booklet, describes the following in regard to the Plan. Covered services under the Plan do not include "[s]ervices or supplies deemed not medically necessary." (Compl. Ex. B, (DE 1-2) 45) (small caps omitted). The Benefit Booklet's glossary defines "medically necessary" and "medical necessity" as

> [t]hose covered services or supplies that are:
> (a) Provided for the diagnosis, treatment, cure, or relief of a health condition, illness, injury or disease, and, except for clinical trials as described under the Plan, <u>not for experimental, investigational, or cosmetic purposes</u>,
> (b) Necessary for and appropriate to the diagnosis, treatment, cure, or relief of a health condition, illness, injury, disease, or its symptoms,
> (c) Within the generally accepted standards of medical care in the community, and
> (d) Not solely for the convenience of the insured, the insured's family, or the provider.

---

[3] Plaintiff attached to his complaint a "Benefit Booklet for Employees of Sensus USA Inc.," ("Benefit Booklet"), which describes the Plan, (see (DE 1-2)), and the above-referenced Corporate Medical Policy (see (DE 1-3)), both of which are treated as pleadings at this stage. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

3

> For medically necessary services, Blue Cross may compare the cost effectiveness of alternative services . . . , when determining which of the services . . . will be covered . . . .

(Id. at 72) (emphasis added) (small caps omitted).

The Benefit Booklet defines experimental by reference to investigational, which it defines as "[t]he use of a service . . . including . . . treatment . . . that Blue Cross does not recognize as the standard medical care for the condition, disease, illness, or injury being treated." (Id.). The definition enumerates the following relevant criteria as "the basis for Blue Cross's determination that a service or supply is investigational:"

> . . . .
> (b) There is insufficient or inconclusive scientific evidence in peer-reviewed medical literature to permit Blue Cross's evaluation of the therapeutic value of the service or supply
> (c) There is inconclusive evidence that the service or supply has a beneficial effect on health outcomes
> (d) The service or supply under consideration is not as beneficial as any established alternatives
> (e) There is insufficient information or inconclusive scientific evidence that, when utilized in a non-investigational setting, the service or supply has a beneficial effect on health outcomes and is as beneficial as any established alternatives.
>
> If a service or supply meets one or more of the criteria, it is deemed investigational . . . . Determinations are made solely by Blue Cross after independent review of scientific data. Opinions of experts in a particular field and/or opinions and assessments of nationally recognized review organizations may also be considered by Blue Cross but are not determinative or conclusive.

(Id.).

The Benefit Booklet also explains that "Blue Cross medical policies are guides considered by Blue Cross when making coverage determinations." (Id. at 59). The Corporate Medical Policy explains that "Blue Cross will provide coverage for Charged Particle Radiotherapy (Proton or Helium Ion) when it is determined to be medically necessary because the medical criteria and guidelines shown below are met." (Compl. Ex. B, (DE 1-3) at 1). The medical criteria for coverage

4

are that the "charged particle irradiation with proton or helium ion beams" are used for certain enumerated medical conditions. (See id. at 2). The Corporate Medical Policy explains, conversely, "charged particle irradiation is considered investigational for all other indications . . . including but not limited to, use of proton beam therapy for: clinically localized prostate cancer." (Id.). The Corporate Medical Policy's "Guidelines" section explains that "[r]esults of proton beam studies for clinically localized prostate cancer have shown similar results and outcomes when compared to other radiation modalities" and that, accordingly, "proton beam therapy is considered investigational for treating prostate cancer." (Id.).

Despite defendant Blue Cross's adverse decision based on these documents, plaintiff proceeded to receive proton therapy treatment and paid $109,000 out of pocket. Plaintiff then sought reimbursement under the Plan from defendant Blue Cross, who again denied coverage. Plaintiff and his physicians internally appealed this decision, but defendant Blue Cross upheld its initial decision on the basis that proton therapy is investigational in this situation. Plaintiff sought a second-level internal review, which was conducted by a review panel, including an external physician board-certified in radiation oncology, that concluded that proton therapy for treatment of plaintiff's prostate cancer was not medically necessary under the Plan, upholding the previous coverage decision and exhausting plaintiff's internal administrative right to review. Plaintiff sent a letter asking for reconsideration, which defendant Blue Cross interpreted as a request for external review, which was conducted by MES Peer Review Services ("MES"). MES upheld the denial on the ground that proton therapy was not considered medically necessary for plaintiff and his condition.

Plaintiff alleges that defendant Blue Cross relied solely on its Corporate Medical Policy to deny coverage and to define proton therapy as investigational and therefore falling outside of

5

coverage under the Plan, which allegedly resulted in application of more "restrictive coverage guidelines than allowed under the plain language of the plan." (Compl. ¶¶ 7, 13). Plaintiff alleges that by placing the faulty Corporate Medical Policy into the hands of unqualified medical directors, defendant Blue Cross guarantees that the directors will categorically deny claims for proton therapy because of "uniform application of an arbitrary medical policy," which "results in "boilerplate adverse benefit determinations." (Compl. ¶¶ 1, 39, 41). Plaintiff also alleges that defendant Blue Cross, in denying him coverage, ignored the evidence he and his physicians presented that proton therapy is safe, efficient, and the national medical standard.

Further, plaintiff alleges a number of procedural deficiencies in the denial of his claim: failure to provide copies of the internal guidelines relied upon in making adverse benefit determinations; failure to provide prompt and reasonable explanations of the bases relied on under the terms of the plan documents for claim denial; failure to adequately investigate merits of claims due to failure to consult health care professionals trained in the field of medicine involved in the claim; and failure to independently evaluate claimants' medical records prior to denial.

As a purported separate matter, plaintiff alleges that defendant Blue Cross, in drafting and implementing the Corporate Medical Policy, failed to review contemporary medical evidence that proton therapy is the standard of care in the medical community or any new evidence since 2010 regarding proton therapy. Plaintiff avers that defendant Blue Cross has implemented this course of action and policy because of proton therapy's significant expense relative to radiotherapy rather than basing its decision on "the interests of participants and beneficiaries of its health insurance plans." (Compl. ¶ 2). Both the Corporate Medical Policy and resulting denial of coverage for proton therapy are alleged to have violated the terms of the Plan and to have constituted a breach of Blue Cross's fiduciary duties as an administrator under ERISA.

6

**COURT'S DISCUSSION**

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

B.  Analysis

    1.    § 1132(a)(1)(B) Claim

ERISA provides a cause of action for a participant or beneficiary of a plan covered under ERISA to bring a civil action "to recover benefits due to him or her under the plan's terms, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[C]ourts conduct de novo review of an administrator's denial of benefits unless the plan grants the administrator discretion to determine a claimant's eligibility for benefits, in which case the administrator's decision is reviewed for abuse of discretion." Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161, 165 (4th Cir. 2013). Under de novo review, "the court review[s] the employee's claim as it would have any other

7

contract claim—by looking to the terms of the plan and other manifestations of the parties' intent." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112-13 (1989).

Under the abuse of discretion standard, the court will "affirm a discretionary decision of a plan administrator if it is the result of a 'deliberate, principled reasoning process' and is supported by 'substantial evidence,' even if [the court] would reach a different decision independently." Helton v. AT&T Inc., 709 F.3d 343, 351 (4th Cir. 2013) (quoting Williams v. Metro. Life Ins. Co., 609 F.3d 622, 630 (4th Cir. 2010)). "Substantial evidence" is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion . . . [and] consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984) (quotation omitted), abrogated on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003). The United States Court of Appeals for the Fourth Circuit has set out nonexclusive factors to guide the abuse-of-discretion inquiry in this area:

> 1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Williams v. Metro. Life Ins. Co., 609 F.3d 622, 630 (4th Cir. 2010) (quoting Booth v. Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000)).[4]

In examining whether an administrator's decisionmaking process was reasoned and principled, courts may not "require administrators automatically to accord special weight to the

---

[4] The "Booth factors" should be viewed "as more particularized statements of the elements that constitute a 'deliberate, principled reasoning process' and 'substantial evidence.'" Donnell v. Metro. Life Ins. Co., 165 F. App'x 288, 294 n.6 (4th Cir. 2006).

8

opinions of a claimant's physician; nor . . . impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Nord, 538 U.S. at 834. However, "[p]lan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Id.; Helton, 709 F.3d at 359 ("While an administrator has the authority to weigh conflicting pieces of evidence, it abuses its discretion when it fails to address conflicting evidence."). For example, a plan administrator acts unreasonably where it "reached its decision only by misreading some evidence and by taking other bits of evidence out of context." Myers v. Hercules, Inc., 253 F.3d 761, 768 (4th Cir. 2001). Additionally, this court has recognized that "[i]t is not reasonable to rely upon a consulting physician's opinion if that opinion is not supported by substantial evidence." McKinnon v. Duke Univ., No. 5:19-CV-205-FL, 2020 WL 4506096, at *10 (E.D.N.C. Aug. 5, 2020) (collecting cases).

As a preliminary matter, the parties disagree on what standard of review is proper because of their disagreement on what document constitutes the "plan" from which an administrator's discretionary authority could be granted. The court need not decide the relevant standard of review for defendant Blue Cross's decision at this stage because even under the abuse of discretion standard, which is more favorable to defendant Blue Cross, plaintiff has properly alleged that defendant Blue Cross abused that discretion in making its coverage determination. See, e.g., Wilkinson v. Sun Life & Health Ins. Co., 674 F. App'x 294, 299 (4th Cir. 2017).

Viewed in light most favorable to plaintiff, the facts alleged in the complaint permit a reasonable inference that defendant Blue Cross abused its discretion under several Booth factors. The complaint alleges that the Corporate Medical Policy, when placed in the hands of unqualified and unlearned decisionmakers, guarantees that those decisionmakers will give the policy

9

inordinate and determinative weight and "categorically den[y] all prior approval requests and claims for [proton therapy] for many types of cancer." (See Compl. ¶ 41). Such a practice would weigh in favor of finding that defendant Blue Cross had neither engaged in the requisite reasoned and principled decisionmaking process required nor adequately considered materials in making its decision, implicating the third and fifth Booth factors. See Williams, 609 F.3d at 630; see also Whitley v. Carolina Care Plan, Inc., No. C/A/ 3:06-257-CMC, 2006 WL 3827503, at *32 (D.S.C. Dec. 28, 2006) (finding that defendant administrator's "absolute reliance" on a third-party, outdated medical report to deny coverage "would constitute an abrogation of the [defendant's] fiduciary responsibility" and weighed towards finding it had abused its discretion). Plaintiff's allegation that the Corporate Medical Policy allows defendant Blue Cross's decisionmakers to overly rely on the policy's rationale to avoid deliberate decisionmaking is adequate, when taken in conjunction with his other allegations, at this stage of the proceedings. See Donnell, 165 F. App'x at 295 (finding, in contrast, that extensive, measured review of multiple, reliable, independent sources constituted a principled reasoning process); see also, e.g., Day v. Humana Ins. Co., 335 F.R.D. 181, 194 (N.D. Ill. 2020) (explaining that the allegation that defendant "relied 'exclusively' on the 'outdated' Policy in reviewing her claim for benefits and thereby violated the Plan . . . might be insufficient by itself" because defendant "referenced other sources in the benefit and appeal determinations," but that plaintiff's claim survived because she had "also alleged that [defendant] violated the Plan by giving undue weight to the Policy").

Further, plaintiff's allegations regarding defendant Blue Cross's reliance on its Corporate Medical Policy are compounded by allegations that plaintiff's own evidence on the medical necessity of proton therapy for him and its non-investigational nature was ignored, which further raises plaintiff's right to relief above a speculative level, in applying the Booth factors.

10

While the court will not, and should not, "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation," Nord, 538 U.S. at 834, a plan administrator still "abuses its discretion when it fails to address conflicting evidence," Helton, 709 F.3d at 359. Taking the facts in the light most favorable to plaintiff, the fact that the "Final Internal Adverse Benefit Determination" lists among the "[e]vidence or documentation reviewed" the "Level 2 appeal request dated June 28, 2016, inclusive of records from" plaintiff's physicians, (see Mem. Supp. Mot. Dismiss Ex. 1, (DE 63-1) at 2), is not dispositive of whether defendant Blue Cross addressed the conflicting evidence presented by plaintiff. Cf. Calvert v. Firstar Fin., Inc., 409 F.3d 286, 296 (6th Cir. 2005) (finding a reviewing physician's report to be inadequate because, even though the reviewing physician "does mention [the claimant's doctors] by name, he does not explain why their conclusions . . . were rejected out-of-hand"); Kalish v. Liberty Mut./Liberty Life Assur. Co. of Bos., 419 F.3d 501, 510 (6th Cir. 2005) (explaining that a report was "inadequate" because, inter alia, it failed to mention certain contrary findings and failed to rebut the contrary conclusions reached by the examining physician). Taking plaintiff's alleged facts as true, as the court must, plaintiff has alleged that defendant Blue Cross failed to address or discuss the contrary medical evidence he provided, which would weigh in favor of a finding that defendant Blue Cross had abused its discretion in denying coverage for plaintiff's claim.

For similar reasons, notations on the Corporate Medical Policy that the policy undergoes yearly "Specialty Matched Consultant Advisory" review do not negate plaintiff's allegation that the policy is outdated in that the medical evidence it relies upon is outdated "and ignores contemporary medical evidence." (Compl. ¶ 35). These allegations taken together, viewed in the light most favorable to plaintiff, give rise to the reasonable inference that defendant Blue Cross

11

reviews the policy every year but fails to incorporate any new or contemporary medical evidence into the Corporate Medical Policy's finding and recommendation, weighing in favor of an abuse of discretion under Booth's second factor.

Finally, although some are conclusory and therefore not credited by the court, plaintiff's allegations regarding various procedural failures, including failure to provide plaintiff with a copy of internal guidelines, go towards the factor of whether defendant Blue Cross's denial was "consistent with the procedural and substantive requirements of ERISA." Booth, 201 F.3d at 342. For example, the relevant regulations require that plan administrators, in notifying claimants of benefit determinations, "provide free of charge to the claimant upon request" a copy of the internal guideline "relied upon in making the adverse determination." 29 C.F.R. § 2560.503-19(g)(v)(A). If plaintiff's request for such a document was not fulfilled, which is suggested by the complaint, this would weigh in favor of finding an abuse of discretion by defendant Blue Cross under the relevant Booth factor. See also Mondry v. Am. Fam. Mut. Ins. Co., 557 F.3d 781, 798 (4th Cir. 2009) ("Thus, a participant who is denied access to internal guidelines that relate to her unsuccessful claim for benefits may be able to show that she was denied full and fair review of the denial by the claims administrator.").

Defendants argue that the Company Medical Policy, which is treated as a pleading due to its attachment to the complaint, belies plaintiff's allegation that the policy is outdated. Defendants also contend that the adverse claim determinations, which defendants attach to their motions to dismiss, belie plaintiff's allegation that defendant Blue Cross solely relied on the Company Medical Policy in denying plaintiff's claim for coverage.

In considering a Rule 12(b)(6) motion, a court "may consider the complaint itself and any documents that are attached to it," CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d

150, 154 (4th Cir. 2009), as well as a document attached to defendants' motions to dismiss "if [the document] was integral to and explicitly relied on in the complaint and if the plaintiff[] do[es] not challenge its authenticity." Am. Chiropractic v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (internal alterations and quotation marks omitted); see also Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607 (4th Cir. 2015) (explaining that in examining facts in documents incorporated into or relied upon by the complaint, "the court must construe such facts in the light most favorable to the plaintiffs"). Where the document attached to a defendant's motion to dismiss meets the "integral to" and unchallenged authenticity standard, "the district court properly treat[s] [the document] as if it had been attached to the complaint." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016).

However, "[p]laintiffs attach exhibits to their complaints" or rely on documents that are integral to the complaint "for all sorts of reasons." Id. at 167. Concerning a "document . . . prepared by or for the defendant," courts must consider that the document "may reflect the defendant's version of contested events or contain self-serving, exculpatory statements." Id. Therefore, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." Id. (discussing proper treatment of an "Incident Report," which plaintiff quoted portions of in his complaint and which was attached by defendant to its motion to dismiss, at the motion to dismiss stage).

Here, plaintiff has not relied on the Company Medical Policy attached to his complaint nor the documents attached to defendants' motions to dismiss for the truth of their contents. Rather, as discussed above, the fact that the Company Medical Policy contains a section indicating yearly review, taken in the light most favorable to plaintiff, does not defeat his allegation that the policy is outdated in its reliance on dated medical evidence. Nor, of course, does plaintiff's attachment

13

of the policy to his complaint mean that its conclusion (proton therapy is investigational) defeats plaintiff's contrary allegation that proton therapy is non-investigational and medically necessary, and that the policy is erroneous in its conclusion otherwise.

Second, the adverse claim decisions attached to defendants' motions, viewed in the light most favorable to plaintiff, are properly considered alongside the complaint as examples of the alleged rote actual reliance by decisionmakers on the Corporate Medical Policy's conclusion that proton therapy is investigational, despite language in those documents that allegedly indicate reliance on other additional sources.[5] For example, the complaint alleges that "[b]y placing th[e Corporate Medical Policy] into the hands of medical directors" that "adjudicate Members' claims," who are alleged to be unqualified to make the requisite medical determinations and instead "follow inadequate policies and procedures for clinical review," defendant Blue Cross in effect "categorically denies all prior approval requests and claims for [proton therapy]." (Compl. ¶¶ 39-41). Plaintiff also alleges that the external reviewer "rubber-stamped [defendant] Blue Cross's denial decision without conducting a truly independent evaluation of whether [proton therapy] is a proven and effective treatment for prostate cancer." (Id. ¶ 10).

In sum, even upon consideration of the various documents incorporated into plaintiff's pleadings, plaintiff has adequately alleged facts that allow a reasonable inference that defendant Blue Cross abused its discretion in denying plaintiff's claim for coverage, giving plaintiff a plausible claim for relief under § 1132(a)(1)(B). Further, factual development may, of course, reveal that defendant Blue Cross did engage in the requisite principled and reasoned

---

[5] Although review of the documents attached to defendants' motions undercuts plaintiff's allegations, in isolation, that defendant Blue Cross bare-facedly relied on nothing but the CMP, (see, e.g., Compl. ¶ 56 ("BCBSNC provided [p]laintiff with no basis for its negative coverage determination aside from its reliance . . . on [its] pre-existing policy")), the pleadings as a whole, taken in the light most favorable to plaintiff, lead to a reasonable inference that the existence of the CMP was outcome determinative and acted as an irrebuttable presumption of denial for certain proton therapy claims.

14

decisionmaking process supported by substantial evidence, but at this stage of the proceedings, plaintiff's allegations give rise to a plausible claim for relief. Read in whole, the pleadings state a plausible claim of wrongful claim denial under ERISA's § 1332(a)(1)(B) due to an abuse of discretion by the plan administrator.

2. § 1332(a)(3) Claim

Section 1132(a)(3) of ERISA provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). This provision does not authorize "'appropriate equitable relief' at large." Mertens v. Hewitt Assocs., 508 U.S. 248, 253 (1993). Rather, it only authorizes "such relief as will enforce 'the terms of the plan' or the statute." US Airways, Inc. v. McCutchen, 569 U.S. 88, 100 (2013) (quoting 29 U.S.C. § 1132(a)(3)).

When a plaintiff seeks relief under § 1332(a)(3), the court must determine "whether the claimant's injury is addressed by ERISA's other provisions and whether those provisions afford adequate relief" because if they do, "equitable relief under § 1132(a)(3) will normally not be 'appropriate.'" Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 105 (4th Cir. 2006). This is because § 1332(a)(3) is ERISA's "catchall" provision, which "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy," and "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). The Fourth Circuit has previously interpreted the language in Varity to intimate

15

that "equitable relief for breach of fiduciary duty would not be available for denial of benefits claims appealable under § 1132(a)(1)(B)." Korotynska, 474 F.3d at 106.

However, the Supreme Court in CIGNA Corp. v. Amara further clarified what remedies are available to claimants under § 1132(a)(3) to include certain equitable forms of money payment and equitable estoppel. 563 U.S. 421, 440-42 (2011) ("Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable.'"). As the Fourth Circuit explained in McCravy v. Metropolitan Life Insurance Co., "the portion of Amara in which the Supreme Court addressed Section 1132(a)(3) stands for the proposition that remedies traditionally available in courts of equity, expressly including estoppel and surcharge, are indeed available to plaintiffs suing fiduciaries under Section 1132(a)(3)." 690 F.3d 176, 181 (4th Cir. 2012).

The Fourth Circuit has not squarely addressed the impact of Amara on Korotynska's holding, but see Savani v. Washington Safety Mgmt. Sols., LLC, 474 F. App'x 310, 313 n.2 (4th Cir. 2012) ("The district court also properly dismissed count two on the grounds that a party may not request simultaneous relief under both ERISA, § 502(a)(1)(B) and § 502(a)(3)." (citing Korotynska, 474 F.3d at 107))[6]; however, other circuits' opinions addressing Amara's impact on their precedent that held ERISA claimants may not seek duplicative relief under § 1132(a)(1)(B)

---

[6] Plaintiff cites a number of cases that purportedly evince that multiple circuits have held that "plaintiffs [are not] barred from initially bringing a claim under the § 1132(a)(3) catchall provision simply because they" have also "brought a claim under the more specific portion of the statute, § 1132(a)(1)(B)." See, e.g., Silva v. Metro. Life Ins. Co., 762 F.3d 711, 727 (8th Cir. 2014). However, Amara did not announce the rule plaintiff now proffers and the Fourth Circuit's untouched opinion in Korotynska was decided at the pleading stage, 474 F.3d at 102, as was the recent, albeit unpublished, decision in Savani, which held that the dismissal of simultaneous, duplicative relief at the pleading stage was proper, 474 F. App'x at 313 n.2. In light of such binding and persuasive authority, the court is unable and unwilling to adopt plaintiff's novel rule.

16

and § 1132(a)(3) have found that Amara had not undercut those cases. See, e.g., Rochow v. Life Ins. Co. of N. Am., 780 F.3d 364, 375 (6th Cir. 2015) (explaining that "[w]hile Varity certainly acknowledges the possibility of equitable relief, and Amara outlines the scope of potential equitable relief, when appropriate, the Supreme Court has never stated that recovery under both § 502(a)(3) and § 502(a)(1)(B) may be warranted for a single injury" and that "[d]espite [plaintiff's] attempts to obtain equitable relief by repackaging the wrongful denial of benefits claim as a breach-of-fiduciary-duty claim, there is but one remediable injury and it is properly and adequately remedied under § 502(a)(1)(B)"); see also Leach v. Aetna Life Ins. Co., No. WMN-13-2757, 2014 WL 470064, at *4 (D. Md. Feb. 5, 2014) ("[C]ourts have consistently held that Amara and [its] progeny did not alter the rule announced in Varity."). This court's reading of Korotynska in light of Amara results in a similar conclusion; Amara clarifies that "remedies traditionally available in courts of equity, expressly including estoppel and surcharge" are available under § 1132(a)(3), which in no way undercuts Korotynska and Varity's holdings that an ERISA claimant may only access the equitable relief available under § 1132(a)(3) if his or her injury is not addressed by ERISA's other remedial provisions.

Here, plaintiff's claim for himself and the putative class under § 1132(a)(3) must be dismissed under Varity and Korotynska as their injuries are adequately remedied by the relief available under § 1132(a)(1)(B). The injunctive relief and equitable accounting and disgorgement sought under § 1132(a)(3) seek to remedy the same injury that the § 1132(a)(1)(B) claim does: the wrongful denials of plaintiff and the putative class members' claims for coverage.

      a.    Accounting and Disgorgement

Accounting and disgorgement have been recognized both by the Supreme Court and the Fourth Circuit as possible equitable remedies under § 1132(a)(3). See Pender v. Bank of Am.

Corp., 788 F.3d 354, 364-65 (4th Cir. 2015) (citing Great–W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 n.2 (2002)). "An accounting for profits 'is a restitutionary remedy based upon avoiding unjust enrichment.'" Id. at 364 (quoting 1 Dan Dobbs, Law of Remedies § 4.3(5), at 608 (2d ed. 1993)). "It requires the disgorgement of 'profits produced by property which in equity and good conscience belonged to the plaintiff.'" Id. (quoting Dobbs, supra at 608).

However, these are not the "appropriate circumstances" as recognized in Pender, wherein § 1132(a)'s "other subsections do not afford [p]laintiff[] any relief." 788 F.3d at 366. Instead, the instant circumstances are more akin to those recognized by the United States Court of Appeals for the Sixth Circuit in Rochow v. Life Insurance Co. of North America. 780 F.3d 364. In that case, the court explained that it would not allow the plaintiff to "recover disgorged profits under § 502(a)(3), in addition to his recovery under § 502(a)(1)(B), based on the claim that the wrongful denial of benefits also constituted a breach of fiduciary duty" "because absent a showing that the § 502(a)(1)(B) remedy is inadequate," such would "result in an impermissible duplicative recovery, contrary to" Varity. Rochow, 780 F.3d at 371. The court explained that Varity "emphasized that ERISA remedies are concerned with the adequacy of relief to redress the claimant's injury, not the nature of the defendant's wrongdoing." Id.

Here, plaintiff requests an accounting and disgorgement by defendants of profits made from "monies representing the improperly denied claims" and those "accrued by [d]efendants by denying [proton therapy] requests for the treatment of prostate cancer." (Compl. ¶ 110) (emphasis added). The injury that plaintiff seeks remedy for is the denials of claims for coverage, which are "addressed by ERISA's other provisions," specifically, § 1132(a)(1)(B), and plaintiff has failed to show why that "provision[] [fails to] afford adequate relief," Korotynska, 474 F.3d at 106, in arguing that disgorgement will be "especially important to putative class members who were

18

unable to obtain authorization or reimbursement for [proton therapy]." (Resp. Mot. Dismiss (DE 69) 23).

Plaintiff alleges a number of theories of breach of fiduciary duty in his claim for equitable relief; however, in essence, the only injury he or any class member has suffered is the allegedly improper denial of their claim, as plaintiff recognizes when stating that "[p]laintiff and [c]lass [m]embers have been harmed by breaches of fiduciary duty of Blue Cross because their claims have been subjected improperly to investigational exclusion, leading to denials of coverage for [proton therapy]." (See Compl. ¶ 107). Wrongly denied claims are adequately remedied through § 1132(a)(1)(B)'s provision of a cause of action to recover benefits due, enforce plan rights, and clarify rights to future benefits. Accordingly, plaintiff's claim for the equitable relief of accounting and disgorgement under § 1132(a)(3) must be dismissed as duplicative.

        b.      Injunctive Relief

Plaintiff also seeks, as equitable relief under § 1132(a)(3), an injunction requiring defendants to "retract their categorical denials of [proton therapy]"; to "provide notice of said determinations . . . to all Blue Cross subscribers/members who have had requests for [proton therapy] to treat prostate cancer denied"; and to "provide for re-review of all such improperly denied claims."[7] (Compl. ¶ 109). For much the same reasons the claim for accounting and disgorgement fails as duplicative under Korotynska, so too does this claim.

---

[7] Although not included specifically under the portion of the complaint related to § 1132(a)(3), plaintiff's requested declaratory relief, an order declaring that defendant Blue Cross violated ERISA and its fiduciary duties, would be a possible equitable remedy under § 1332(a)(3). See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 27 n.31 (1983) ("Section 502(a)(3)(B) of ERISA has been interpreted as creating a cause of action for a declaratory judgment."). However, as has already been noted, "ERISA specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims," § 1332(a)(1)(B). See Varity, 516 U.S. at 512. Accordingly, because the injury underlying plaintiff's § 1132(a)(1)(B) claim and the injury giving rise to a need for declaratory relief are one in the same, dismissal of the claim for declaratory judgment is also proper. See Korotynska, 474 F.3d at 106.

The injury that plaintiff's requested injunction would remedy is the allegedly wrongful denial of benefits to plaintiff and the putative class. The retraction, notice, and "re-review" would all serve the ultimate purpose of allowing plaintiff and class members to recover wrongfully denied benefits, which is the exact remedy adequately provided by § 1132(a)(1)(B)'s cause of action that allows recovery of benefits, enforcement of rights under the plan, and clarification of rights to future benefits; all of which serve as an adequate remedy to plaintiff and the class members' purported injury. Just as in Korotynska, "the equitable relief [plaintiff] seeks under § 1132(a)(3) . . . is pursued with the ultimate aim of securing the remedies afforded by § 1132(a)(1)(B)." 474 F.3d at 107-08. Accordingly, plaintiff's claim for injunctive relief must too be dismissed as duplicative.

## CONCLUSION

Based on the foregoing, defendants' motions are GRANTED IN PART and DENIED IN PART. Plaintiff's second claim for equitable relief under 29 U.S.C. § 1332(a)(3) is DISMISSED WITHOUT PREJUDICE.

SO ORDERED, this the 4th day of December, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge