IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-577-FL

| | | |
|---|---|---|
| JEFFREY GREENWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | (SEALED)[1] |
| GROUP HEALTH PLAN FOR | ) | |
| EMPLOYEES OF SENSUS USA INC., and | ) | |
| BLUE CROSS BLUE SHIELD OF | ) | |
| NORTH CAROLINA, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the parties' cross-motions for summary judgment,

(DE 152, 155, and 158), and plaintiff's motion for attorneys' fees and costs (DE 130). The issues

raised in the summary judgment motions are ripe for ruling. For the following reasons, defendants'

motions are denied, plaintiff's motion for summary judgment is granted, and plaintiff's motion for

attorneys' fees and costs is denied without prejudice.

## STATEMENT OF THE CASE

This matter arising under the Employee Retirement Income Security Act of 1974

("ERISA") returns to the court following remand to defendants for further administrative

---

[1]    Where the court's order references plaintiff's health information, the parties are DIRECTED to file jointly
under seal, within 14 days, a copy of this order marked to reflect any perceived necessary redactions with the words
"Proposed Redacted" affixed to the captioned title. Upon the court's inspection and presuming its approval, redacted
copy of this order, as proposed by the parties in accordance with controlling authorities, will be made a part of the
public record. If upon its review the court determines a different approach other than what is proposed may be
necessary, notice will be given. If together the parties determine no redaction is warranted, they are DIRECTED to
file jointly, within that same 14-day period, a notice to that effect. In that event, the clerk will solicit the court's
approval to unseal this order before taking further action.

proceedings, ordered by the court in its March 29, 2022, order (hereinafter, the court's "first summary judgment order"). Those proceedings now completed, the court considers again cross-motions for summary judgment by the parties concerning defendants' renewed denial of plaintiff's claim for benefits. The court sets forth below a summary of the procedural history of this case bearing upon the instant motions. Reference is made to the court's first summary judgment order for further description of proceedings taking place prior to that order.

Plaintiff, a former prostate cancer patient, commenced this putative class action July 19, 2019, in the United States District Court for the Northern District of Texas,[2] asserting claims for denial of coverage through defendant Group Health Plan for Employees of Sensus USA, Inc. ("Sensus Group Health"), his employer-provided health insurance plan, for a medical procedure called proton therapy that treats that condition. Defendant Blue Cross Blue Shield of North Carolina ("Blue Cross") provided administrative services, and in that role, it denied plaintiff's claim.

This court granted in part and denied in part defendants' motions to dismiss on December 4, 2020, rendering plaintiff's claim to recover benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) the only one remaining. After a period of limited discovery, defendant Blue Cross filed the first administrative record, comprised of relevant policies and materials from plaintiff's various appeals of the denial of his claim, including plaintiff's medical record, certain scientific papers, and the adverse determinations at each stage. The parties filed cross-motions for summary judgment July 29, 2021. In the court's first summary judgment order, the court denied defendants' motions for summary judgment, granted in part and denied in part plaintiff's motion for summary judgment,

---

[2]     On December 17, 2019, the parties jointly moved to transfer the case to the United States District Court for the Eastern District of North Carolina and that motion was granted on December 20, 2019. (See (DE 30, 30-1, 32)).

and remanded plaintiff's claim for benefits to defendant Blue Cross for further administrative proceedings.  (See DE 129).  Thereafter, plaintiff filed the instant motion for attorneys' fees.

After defendant Blue Cross obtained two extensions of time to render a decision, the parties notified the court of defendant Blue Cross's final decision to uphold its denial of plaintiff's claim on appeal via status report filed September 14, 2022.  Defendant Blue Cross filed a supplemental administrative record, including those documents that had been part of the original administrative record with continued relevance to the proceedings on remand, relevant policies and materials from plaintiff's appeals following Blue Cross's adverse decision on remand, scientific papers, the adverse determinations at each stage, correspondence between opposing parties' counsel, and some correspondence between defendant Blue Cross and its reviewers.  The instant renewed motions for summary judgment followed October 7, 2022.[3]

## STATEMENT OF UNDISPUTED FACTS

Plaintiff participated in a self-funded health benefit plan (the "plan") sponsored and administered by defendant Sensus USA for which defendant Blue Cross Blue Shield provided administrative services, "including review of submitted claims under the plan."  (Pl.'s 2d Opp. Stmt. (DE 16) ¶¶ I(a)-(e)).[4]  In June 2015, plaintiff was diagnosed with prostate cancer.  (Id. ¶ II(a)).  Plaintiff consulted with doctors at the MD Anderson Proton Cancer Center in Houston, Texas, (id. ¶ II(b)), including Quynh-Nhu Nguyen, MD (R. at 110),[5] and eventually underwent a

---

[3]     Although defendants' motions are captioned as motions "for judgment on the administrative record," the court refers to them, along with plaintiff's motion, as "summary judgment" motions for ease of reference where the standard of review sought in each motion is the summary judgment standard set forth herein.  (See DE 153 at 2-3; 159 at 3.)

[4]     Where a fact asserted in a movant's statement of material facts is undisputed, the court cites to the opposing parties' responsive statement of facts, where it indicates the fact is admitted, undisputed, or without opposing fact. Additionally, where facts from previous stages of the case remain relevant or provide important context, the court cites to the parties' original statements of material facts filed July 29, 2021.

[5]     Hereinafter, all citations to the administrative record at docket entry 98 (DE 98) shall be denoted as "R."

3

prostatectomy. (Def. Blue Cross's 1st Opp. Stmt. (DE 110) ¶ 14). Where, following surgery, plaintiff still had "evidence of systemic disease," (Id. ¶ 24; R. at 386), his physicians believed proton therapy was required. (Def. Blue Cross's 2d Opp. Stmt. (DE 154) ¶ II(c); see R. at 38).

Proton therapy, also called proton beam radiation therapy, proton beam therapy, "PBT," or "PBRT," is a "technology for delivering . . . radiation with positively charged atomic particles." (R. Supp. at 1066; see Def. Blue Cross's 2d Opp. Stmt (DE 110) ¶ II(c)). Conventional radiation therapy, also called photon therapy, which includes intensity modulated radiation therapy ("IMRT") as a subset, involves "electromagnetic (i.e., photon) radiation." (Pl.'s Opp. Stmt. (DE 114) ¶¶ I(q)-(r); R. at 24). "Proponents of proton therapy argue that it could have advantages over . . . photon-based radiation in certain clinical circumstances [because it] deliver[s] less radiation dose to some of the surrounding normal tissues." (R. Supp. ¶ 1176). Proton therapy can be, on average, significantly more expensive than" IMRT. (Pl.'s Opp. Stmt. (DE 114) ¶ III(d); R. at 24).

In March 2016, plaintiff requested prior approval of coverage for proton therapy from defendant Blue Cross. (Id. ¶ III(f)). On March 30, 2016, defendant Blue Cross denied the request, explaining that it considered such therapy "investigational" and asserting that it had "found insufficient scientific evidence in peer-reviewed medical literature to show a beneficial effect on health outcomes, or that [proton therapy] is as beneficial as any established alternatives." (Id. ¶ III(i)). Plaintiff elected to move forward with proton therapy, paying for his cancer treatment out of pocket. (See R. at 860-936).

---

and all citations to the supplemental administrative record at docket entry 149 (DE 149) shall be denoted as "R. Supp." The court relies on the pagination reflected on the record (e.g., "Blue Cross NC Greenwell_0000001") rather than the page number supplied by the court's case management/electronic case filing ("CM/ECF") system, except with respect to its previous order entered March 29, 2022, which will be denoted as "Order" and referred to with the page numbers denoted therein. In all other instances, page numbers in citations to documents and briefs in the record specify the page number imposed by CM/ECF rather than the page number showing on the face of the document, if any.

Defendant Blue Cross does not cover "[s]ervices or supplies deemed not medically necessary." (R. at 984). Its "Benefit Booklet" defines "medically necessary as [t]hose covered services or supplies that are:

(a) Provided for the diagnosis, treatment, cure, or relief of a health condition, illness, injury or disease, and, except for clinical trials as described under the Plan, not for experimental, investigational, or cosmetic purposes,

(b) Necessary for and appropriate to the diagnosis, treatment, cure, or relief of a health condition, illness, injury, disease, or its symptoms,

(c) Within the generally accepted standards of medical care in the community, and

(d) Not solely for the convenience of the insured, the insured's family, or the provider.

For medically necessary services, [defendant Blue Cross] may compare the cost effectiveness of alternative services . . . , when determining which of the services . . . will be covered[.]

(R. Supp. at 1408). It defines experimental and investigational services as those "that BCBSNC does not recognize as standard medical care for the condition, disease, illness, or injury being treated." (Id.). It enumerates the following relevant criteria for making this determination:

(a) Services . . . requiring federal or other governmental body approval, such as drugs and devices that do not have unrestricted market approval from the U.S. Food and Drug Administration . . . .

(b) There is insufficient or inconclusive scientific evidence in peer-reviewed medical literature to permit [defendant Blue Cross's] evaluation of the therapeutic value of the service or supply

(c) There is inconclusive evidence that the service or supply has a beneficial effect on health outcomes

(d) The service or supply under consideration is not as beneficial as any established alternatives

(e) There is insufficient information or inconclusive scientific evidence that, when utilized in a non-investigational setting, the service or supply has a beneficial effect on health outcomes and is as beneficial as any established alternatives.

If a service or supply meets one or more of the criteria, it is deemed investigational . . . . Determinations are made solely by [defendant Blue Cross] after independent review of scientific data. Opinions of experts in a particular field and/or opinions and assessments of nationally recognized review organizations may also be considered by [defendant Blue Cross] but are not determinative or conclusive.

5

(Id.).

Plaintiff's first round of appeals is described in detail in the court's first summary judgment order. Plaintiff and his physician sought review of defendant Blue Cross's denial of coverage five times, on April 21, 2016, (R. at 35); June 13, 2016, (R. at 83-84); June 24, 2016, (R. at 124); June 30, 2016, (R. at 336-38); and July 19, 2016, (R. at 492), and defendant Blue Cross upheld denial at each stage. On June 17, 2016, defendant Blue Cross denied plaintiff's second request for coverage via a notice from Michael Minogue, MD, Medical Director ("Minogue") (R. at 186). "Defendant Blue Cross sent a near duplicate of this denial on June 22, 2016, except now explaining that 'additional clinical information' had been reviewed but that the request 'remains denied' and that plaintiff 'retain[ed] full rights for formal appeal of this determination.' (Order at 7) (quoting R. at 821). This notice also bore Minogue's name. (Id.).

In its first summary judgment order this court held that defendant Blue Cross had abused its discretion by failing to provide the deliberate, principled reasoning process required by law. (See id. at 37). The order explains that defendant Blue Cross required plaintiff to prove "that proton therapy treatment [was] either more beneficial or more effective than any established alternative," (id. at 24), even though the plan defined investigational services in part as those which are not "as beneficial as any established alternatives," (id.), at multiple stages of the proceedings. In addition, the court found that one reviewer, a physician who was board-certified in radiation oncology, provided an explanation for his recommendation of denial that "conflicted with defendant Blue Cross's previous denials." (Id. at 28). Defendant Blue Cross also "failed to even address conflicting evidence . . . demonstrating an arbitrary refusal to credit plaintiff's reliable evidence." (Id. at 31-32) (cleaned up). While there was "no indication that its decision resulted from a conflict of interest . . ., the absence of an evidenced conflict of interest [did] not outweigh

6

what, on the undisputed administrative record, was otherwise an unprincipled and arbitrary decision to deny plaintiff's claim." (Id. at 37).

Where "the typical remedy for an abuse of discretion in denying a benefits claim is to remand the case to the ERISA plan administrator," (id. at 38) (citing Helton v. AT&T, Inc., 709 F.3d 343, 360 (4th Cir. 2013)), the court remanded the case to defendant Blue Cross in order to allow it to provide the "procedurally proper, principled, and reasoned decision on plaintiff's claim that he [was] due." (See Order at 39).

Following remand, defendant Blue Cross created a document titled "Instructions." (Pl.'s 2d Opp. Stmt (DE 167) ¶¶ y-dd; R. Supp. at 65-66). The instructions directed reviewers, inter alia, to 1) "consider whether [proton therapy] is as beneficial as any established alternatives"; 2) "provide a rationale for your ultimate conclusion, with specific explanations regarding sources relied upon"; 3) "address claimant's key sources and specifically explain your conclusions about them"; and to 4) "not require that [proton therapy] be shown to be either more beneficial or more effective than any established alternative to be considered non-investigational." (R. Supp. at 65) (emphasis in original).

Minogue, a Blue Cross employee who had twice reviewed and denied plaintiff's claim in June 2016, created a document entitled "Response to Remand Order of US District Judge Louise W. Flanagan in Greenwell v. Group Health Plan for Employees of SENSUS and Blue Cross NC" and dated May 11, 2022. (R. Supp. at 1088-1105). In contrast to documents produced during previous reviews, this document does not list Minogue's specialty. Compare id. with (R. at 76, 325) (listing the "[p]rofessional [q]ualifications and [l]icensure of the [r]eviewers). Minogue concluded that proton therapy "is not investigational," explaining,

> The treatment has FDA clearance. The adequate medical evidence standard of at least two
> documents is met. The submitted literature shows that [proton therapy] has a beneficial

effect on health outcomes and appears to be as beneficial as any established alternatives. Lastly, [proton therapy] has been shown to have a beneficial effect on health outcomes or is as beneficial as any established alternatives when used in a non-investigational setting.

(R. Supp. at 1101). Minogue also concluded that plaintiff and his physicians had shown that three out of four of the medical necessity factors were met, namely that the treatment 1) "was requested to treat a health condition . . . outside of a clinical trial," 2) "appears necessary and appropriate for treatment of localized prostate cancer," and 4) was "not solely for the convenience of the member, provider, or family." (Id. at 1103).

However, Minogue also found that the third criterion of medical necessity, that the "treatment must be within the generally accepted standards of medical practice in the community," was not met. (Id.). He interpreted this requirement to mean "a consensus of experts in the field to include the appropriate specialty society." (Id. at 1105). Minogue explained that defendant Blue Cross "enlist[s] faculty of Radiation Oncology departments from major medical centers of excellence in North Carolina . . . to review our radiation oncology coverage policies." (Id.). According to Minogue, "[t]his group has expressed that [proton therapy] is not indicated or appropriate for most prostate cancers." (Id.). Minogue also relied on a model policy statement from the American Society for Radiation Oncology (ASTRO) stating that

At the present time, ASTRO believes that comparative efficacy evidence of proton beam therapy with other prostate cancer treatments is still being developed, and thus the role of proton beam therapy for localized prostate cancer within the current availability of treatment options remains unclear. . . . ASTRO strongly supports allowing coverage with evidence development for patients treated in clinical trials or within prospective registries. ASTRO believes that collecting data in these settings is essential to informing consensus on the role of proton therapy for prostate cancer, especially insofar as it is important to understand how the effectiveness of proton therapy compares to other radiation therapy modalities such as IMRT and brachytherapy.

(Id. at 1104).

"On May 11, 2022, [defendant Blue Cross] submitted [p]laintiff's claim to an external reviewer, MCMC," (See Pl.'s 2d Opp. Stmt. ¶ IV.a; R. Supp. at 1107-08), specifying that "this case has been reviewed previously by David I Hsu, M.D., MPH [and] Harold E. Kim, M.D.," (R. Supp. at 1110) and directing that those "reviewers CANNOT review this case." (Id.) (emphasis in original). The case was referred to Gregg Goldin, M.D. ("Goldin"), a board-certified radiation oncologist. (See id. at 1112). Defendant Blue Cross's instructions interpreting this court's previous order are listed as "documentation reviewed." (Id. at 1108). Goldin recommended denial of coverage relying on a rationale excerpted in full here.

> The proton radiation is not proven to yield <u>superior clinical outcomes as compared to standard of care photon-based IMRT in the patient's setting.</u> The ASTRO Model Policy for proton radiation does not support its use in the patient's setting outside the context of a prospective clinical trial. <u>The provider did not show that the patient could not be treated safely/effectively with the use of photon based radiotherapy.</u>

(Id. at 1111) (emphasis added).

Five days after Goldin first closed the case, Anne Shilling, LPN ("Shilling"), a clinical appeals analyst, emailed MCMC personnel with "a few requests" following "further discussion with management." (Id. at 1113). In relevant part, Shilling asked MCMC to "verify" that Goldin followed defendant Blue Cross's instructions and to "clarify" the report. (Id.) Goldin added an addendum May 18, 2022 specifying in relevant part that

> There is not sufficient information or scientific evidence that . . . [proton therapy] has a beneficial effect on health outcomes and is as beneficial as any established alternatives. The . . . literature suggests that [proton therapy] is as beneficial as photon based radiotherapy; however, <u>proton radiation has not been proven to yield superior clinical outcomes.</u>

(Id. at 1120) (emphasis added).

In a letter dated July 11, 2022, counsel for the plaintiff requested "an appeal following [defendant] Blue Cross's . . . re-review decision following the Court's remand," relying on the

existing administrative record, two letters, a set of clinical practice guidelines, a judicial decision from the Southern District of Florida, and a study comparing proton therapy with IMRT. (See R. Supp. at 1279).

John K. Campbell, M.D., ("Campbell"), produced a document titled "Greenwell Request for Coverage Analysis" and dated August 29, 2022. (R. Supp. 1265-78). Campbell found proton therapy to be investigational where there was "insufficient or inconclusive medical and scientific evidence to permit the plan to evaluate the therapeutic value of the service," (id. at 1267), there was "inconclusive medical and scientific evidence in peer-reviewed medical literature that the service has a beneficial effect on health outcomes," (id. at 1268), there was "insufficient information or inconclusive scientific evidence that . . . [proton therapy] has a beneficial effect on health outcomes or is as beneficial as any established alternatives," and proton therapy was "not standard medical care for clinically localized prostate cancer." (Id. at 1270). Under the heading "Component 5 . . . Do address claimant's key sources and specifically explain your conclusions about them," Campbell rejected eight of plaintiffs' sources as, inter alia, irrelevant to proton therapy, containing evidence and analysis insufficient to support the conclusions that plaintiff and his physicians offered the source to support, and containing language highlighting the need for further research. (See id. at 1273-76). Also in this section, Campbell made "[n]otes on additional submitted references," explaining why he found six additional sources submitted by plaintiff unconvincing. (Id. at 1276-78). Campbell accordingly denied plaintiff's request as seeking therapy classified under the plan as investigational, and therefore not medically necessary. (Id. at 1278).

**COURT'S DISCUSSION**

A.    Summary Judgment Motions

1.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "consider[s] each motion separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." Defs. of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 392 (4th Cir. 2014).[6] The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary

---

[6]      Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

2.      Analysis

The facts and law relevant to the court's analysis on several issues remain unchanged from the court's first summary judgment order. Therefore, the court incorporates its analysis and adopts its findings on those issues, specifically that: 1) the Comprehensive Health and Welfare Benefit Plan, also called the "Wrap Agreement," (DE 102-9) and the Benefit Booklet, (see R. at 940-1022), are the operative plan documents for ERISA purposes, (see Order at 15-18); 2) abuse of discretion is the proper standard under which to review defendant Blue Cross's decision, (see id. at 29 at 14-15, 18-22); and 3) no improper motives or conflict of interest played a role in the fiduciary's decision (see id. at 35-37).

Under the abuse of discretion standard, the court will "affirm a discretionary decision of a plan administrator if it is the result of a 'deliberate, principled reasoning process' and is supported

by 'substantial evidence,' even if [the court] would reach a different decision independently."

Helton v. AT&T Inc., 709 F.3d 343, 351 (4th Cir. 2013) (quoting Williams v. Metro. Life Ins. Co.,

609 F.3d 622, 630 (4th Cir. 2010)). "Substantial evidence" is "evidence which a reasoning mind

would accept as sufficient to support a particular conclusion . . . [and] consists of more than a mere

scintilla of evidence but may be somewhat less than a preponderance." LeFebre v. Westinghouse

Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984), abrogated on other grounds by Black & Decker

Disability Plan v. Nord, 538 U.S. 822 (2003). Multiple nonexclusive factors guide the abuse of

discretion inquiry in this area:

> 1) the language of the plan; 2) the purposes and goals of the plan; 3) the adequacy of the
> materials considered to make the decision and the degree to which they support it; 4)
> whether the fiduciary's interpretation was consistent with other provisions in the plan and
> with earlier interpretations of the plan; 5) whether the decisionmaking process was
> reasoned and principled; 6) whether the decision was consistent with the procedural and
> substantive requirements of ERISA; 7) any external standard relevant to the exercise of
> discretion; and 8) the fiduciary's motives and any conflict of interest it may have.

Williams, 609 F.3d at 630 (quoting Booth v. Wal–Mart Stores, Inc. Assocs. Health & Welfare

Plan, 201 F.3d 335, 342-43 (4th Cir. 2000)). These "Booth factors" should be viewed "as more

particularized statements of the elements that constitute a 'deliberate, principled reasoning

process' and 'substantial evidence.'" Donnell v. Metro. Life Ins. Co., 165 F. App'x 288, 294 n.6

(4th Cir. 2006).

Relevant factors in this instance are: 1) the language of the plan; 2) the adequacy of the

materials considered to make the decision and the degree to which they support it; 3) whether the

fiduciary's interpretation was consistent with other provisions in the plan and with earlier

interpretations of the plan; 4) whether the decisionmaking process was reasoned and principled;

5) whether the decision was consistent with the procedural and substantive requirements of

13

ERISA, and 6) the fiduciary's motives and any conflict of interest it may have.  The court addresses these factors in the following analysis.

        a.      The Language of the Plan and Whether Defendant Blue Cross's Interpretation Was Consistent with Earlier Interpretations of the Plan.

"While the administrator is entitled to discretion in interpreting the terms of its plan, those interpretations must be reasonable." <u>Helton</u>, 709 F.3d at 358.  If an ERISA fiduciary's decision is not "supported by the language of the [relevant] plan," it weighs in favor of finding that the fiduciary abused its discretion.  <u>Id.</u> at 357.  The same is true if "the provisions at issue have [not] been applied consistently." <u>Booth</u>, 201 F.3d at 342.

Here, defendant Blue Cross's decision to deny plaintiff's claim was supported by the language of the plan in some instances, but not in others, and defendant Blue Cross inconsistently applied the definitions of key terms under the plan.

As an initial matter, Goldin conducted an analysis that was directly contrary to the language of the plan. As the court explained in its first summary judgment order, the plan defines an investigational service as one that is "not <u>as</u> beneficial as any established alternative or where there is not sufficient information or conclusive scientific evidence that the service is <u>as</u> beneficial as any established alternatives." (Order at 24) (emphasis in original).  The plan's decision to require that plaintiff show proton therapy to be "either <u>more</u> beneficial or <u>more</u> effective than any established alternative," (<u>id.</u>) (emphasis in original), thus constitutes a "misapprehension of the plan's definition of investigational." (Order at 26).  A showing "that proton therapy is not <u>safer</u> or <u>more</u> effective than the standard therapies does not mean that it is not <u>as</u> beneficial as any established alternatives." (Order at 28) (emphasis added).

MCMC documentation indicates that Goldin reviewed the "BCBSNC Greenwell Instructions for Remand Review," (R. Supp. at 1108), which specifically directs the reviewer "<u>not</u>

[to] require that [proton therapy] be shown to be either <u>more</u> beneficial or <u>more</u> effective than any established alternative to be considered non-investigational." (<u>Id.</u> at 1115) (emphasis in original). Nevertheless, Goldin based his denial in part on a finding that "proton radiation is not proven to yield <u>superior</u> outcomes as compared to standard of care photon-based IMRT." (<u>Id.</u> at 1111) (emphasis added). Even upon a second review, Goldin wrote "proton radiation has not been proven to yield <u>superior</u> clinical outcomes." (<u>Id.</u> at 1120) (emphasis added). Goldin's denial and the rationale underpinning it violated ERISA where it disregarded the plan language, this court's first summary judgment order order, and even defendant Blue Cross's instructions interpreting the court's order.

Campbell rejected plaintiff's evidence using similar logic. Reviewing plaintiff's letter of medical necessity, Campbell noted "[c]linical trial data for individual patient selection criteria have not been established as <u>improving</u> outcomes." (<u>Id.</u> at 1274) (emphasis added). As justification for rejecting one of plaintiff's submitted articles, he stated "[t]he evidence does not establish that [proton therapy] has <u>lower</u> toxicity – according to the authors [sic] conclusion: 'There were <u>no differences</u> in QOL summary scores between IMRT and [proton therapy] cohorts during early follow-up.'" (<u>Id.</u>) (emphasis added). Campbell rejected a third study on the basis of a lack of "high quality RCT comparative evidence . . . that there is a long term toxicity <u>reduction</u> or <u>reduction</u> in secondary malignancy." (<u>Id.</u> at 1277) (emphasis added). After rejecting plaintiff's evidence on grounds that contravened the language of the plan, Campbell found that "there [was] insufficient or inconclusive medical and scientific evidence to permit the [p]lan to evaluate the therapeutic value of the service." (<u>Id.</u> at 1267).[7]

---

[7]    Minogue defined "adequate evidence" as "at least two documents of medical and scientific evidence that indicate that the proposed treatment is likely to be beneficial to the member," (<u>id.</u> at 1100); Campbell did not define the term.

In addition, the three reviewers adopted conflicting interpretations of the phrase "within the generally accepted standard of medical care in the community," which the reviewers variously defined with reference to their personal experience, (id. at 1120), by its opposite, (id. at 1270), by adopting the view of a national specialty society, (id. at 1105), and by adopting the views of experts practicing in a state in which plaintiff does not live and whose findings were not memorialized in the record.  (Id. at 1103).

In particular, Goldin did not set forth any interpretations of plan terms or explain how his determinations related to those terms in his initial review.  In his addendum, Goldin appears to have defined the term "within the generally accepted standard of medical care in the community" as "widely used throughout the oncology community," and seems to have relied on personal knowledge rather than data to support his conclusion that proton therapy is not so used.  (Id. at 1120).[8]  Campbell defined the term "standard of care" with reference to its opposite: he characterized non-standard of care services as those "denoted as emerging therapies or services that are restricted to use in a highly controlled clinical trial."  (Id. at 1270).  Minogue defined the criteria to mean "a consensus of experts in the field to include the appropriate specialty society," relying on a model policy from the American Society for Radiation Oncology (R. Supp. at 1065-85) and the recommendation of radiation oncology faculty "from major medical centers of excellence in North Carolina" who review defendant Blue Cross's radiation oncology coverage policies at an annual meeting and whose findings are not memorialized in the record.  (R. Supp. at 1103).[9]  The court extensively analyzed one of these policies, Blue Cross's Corporate Medical

---

[8]     Where another factor involves "the adequacy of the materials considered to make the decision and the degree to which they support it," see post, a reviewer's reliance on his personal experience weighs against finding a fiduciary's discretionary decision reasonable.  Booth, 201 F.3d at 342.
[9]     Again, where another factor involves "the adequacy of the materials considered to make the decision and the degree to which they support it," see post, reliance on the findings of unnamed experts whose evidence and rationale is not included in the record, and who do not appear to have reviewed plaintiff's specific case, weighs against finding a fiduciary's discretionary decision reasonable.  Booth, 201 F.3d at 342.

Policy on Charged Particle Radiotherapy (Proton or Helium Ion), (R. at 25-30),[10] in its first summary judgment order, and found that it was "not in accord with the plan's language to the extent it require[d] that proton therapy be more beneficial than other radiation modalities." (Order at 24-25). Minogue's definition thus incorporated wholesale a policy that misapprehended the language of the plan. (Id. at 24).

Two of the three reviewers applied the language of the plan in a way that repeated the interpretive errors corrected in the court's first summary judgment order. Additionally, the three reviewers' definitions of the term "standard of care" were inconsistent with each other and relied on evidence not memorialized in the record. Accordingly, defendant Blue Cross's renewed interpretation of the plan is inconsistent with both the plain language of the plan and earlier interpretations thereof.

      b.    Adequacy of the Materials Considered to Make the Decision and the Degree to Which They Support It, and Whether Defendant Engaged In a Reasoned and Principled Decisionmaking Process

Courts may not "require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Nord, 538 U.S. at 834. Nevertheless, plan administrators may not "arbitrarily refuse to credit a claimant's reliable evidence." Id.

Gordin, the only board-certified radiation oncologist identified in the record of the remanded proceedings, credited neither "reliable evidence that conflict[ed] with the treating physician's evaluation" nor the evidence submitted by plaintiff. Id. Instead, he denied plaintiff's

_____

[10] The court's analysis of the policy in effect July 1-25, 2016, also applies to that in effect November 2, 2021 – May 30, 2022, where the latter states that "it has not yet been established whether [proton therapy improves outcomes in any setting for clinically localized prostate cancer." (R. Supp. at 1484).

17

claim with a three-sentence rationale that referenced only one document, the "ASTRO Model Policy for proton radiation." (R. Supp. at 1111). Goldin was asked to "clarify . . . his report so that it is understood that he read and followed," (R. Supp. at 1113), the instructions provided by defendant Blue Cross, which directed him, inter alia, to "provide . . . specific explanations regarding sources relied upon," "address claimant's key sources and specifically explain your conclusions about them." (R. Supp. at 1116) (emphasis in original). Goldin did not, however, include explanations of any other sources in his addendum. (Id. at 1120). Engaging in a "wholesale disregard of evidence in claimant's favor," Scott v. Eaton Corp. Long Term Disability Plan, 454 F. App'x 154, 160 (4th Cir, 2011), Goldin relied on a single source to find that proton therapy did not have a beneficial effect on plaintiff's health outcomes, was not as beneficial as established alternatives, was not necessary or appropriate for the treatment of plaintiff's cancer, and was not within a generally accepted standard of medical care. (Id. at 1111, 1120).

The reviewers who did address plaintiff's sources used the same data to reach opposite conclusions. While some disagreement between reviewers is inevitable, the dramatic differences on display here could not have been the result of a "deliberate, principled reasoning process." Williams, 609 F.3d at 630. For example, Minogue found that a study by Hoppe BS weighed in plaintiff's favor, writing that "[t]he authors found no difference in [q]uality of [l]ife summary scores between IMRT and" proton therapy. (R. Supp. at 1091). Campbell thought that the same study highlight[ed] the need for further comparative studies," acknowledging parity of quality of life scores but opining that this metric was undermined by "possible differences in specific bowel symptoms between the 2 cohorts." (Id. at 1274). Whereas Minogue characterized another study as finding "that proton boost significantly improved local control," (id. at 1091), Campbell characterized the same study's use of "photons + protons or photons plus photons" as "not a

comparison that is relevant to or helpful for this case." (Id. at 1276). Minogue found that guidance from the National Comprehensive Cancer Network ("NCCN") supported plaintiff's claim, writing "[c]onventionally fractionated prostate proton therapy can be considered a reasonable alternative to x-ray based regimens with appropriate technology, physics and clinical expertise," (id. at 1091), while Campbell relied on an NCCN panel's belief that "no clear evidence supports a benefit or decrement to proton therapy over IMRT for either treatment efficacy or long-term toxicity." (Id. at 1277). The reviewers reached similarly disparate conclusions regarding studies by Wallis et al.; JD Slater, and Carlos Vargas. (Compare id. at 1090-98 with id. at 1274-78).

In short, Minogue accepted and Campbell rejected each piece of scientific evidence plaintiff submitted. (Id.). When Minogue and Campbell relied on sources not cited by the other, Minogue's sources were invariably favorable to plaintiff, (see, e.g., id. at 1092), and Campbell's were unfavorable. (See, e.g., id. at 1266). While ERISA does not require reviewers to be in perfect agreement with each other, it does require that a decision be supported by "substantial evidence" and does not tolerate failure "to engage in a reasoned and principled decision-making process." Helton, 709 F.3d at 359. Where Gordin failed to base his decision on any peer-reviewed source, and where Minogue and Campbell relied only on those portions of the record that supported their point of view, neither of these factors have been met.

3. Whether the Decision was Consistent With the Procedural and Substantive Requirements of ERISA

ERISA mandates that, "[i]n accordance with regulations of the [Secretary of Labor], every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review." 29 U.S.C. § 1133(2); see also 29 U.S.C. § 1002(13) ("The term 'Secretary' means the Secretary of Labor.").[11]

---

[11] Plaintiff argues that issues decided in his favor at the first stage of review should not have been re-

19

Department of Labor regulations also require that

> in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment . . . is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience <u>in the field of medicine involved in the medical judgment.</u>

<u>Id.</u> at § 2560.503-1(h)(3)(iii) (emphasis added). Of the three reviewers who adjudicated plaintiff's claim, only one, Goldin, was board-certified in radiation oncology. Goldin's review, as the court has explained, was deficient in the extreme. If the regulation is to have any effect, it must require that a consulting physician give the claimant's case something more than the cursory and contradictory appraisal present here. The two other reviewers, Minogue and Campbell, both have M.D.s, but the regulation requires more than this; it demands a consult with a professional with "appropriate training or experience" in the relevant "field of medicine." (<u>Id.</u>). Neither reviewer listed his specialty for the record or stated that he had consulted with any other person, much less consulted with a qualified radiation oncologist. It is therefore impossible for the court to find that the "procedural and substantive requirements of ERISA" were met in this case. <u>Booth</u>, 201 F.3d at 343.

        d.     The Fiduciary's Motives and Any Conflict of Interest It May Have

---

examined by subsequent reviewers. (See DE 156 at 5). He asserts that Minogue's decisions in his favor, namely that proton therapy was not investigational in his case, that it was provided for the treatment of a disease, that it was necessary for and appropriate to the treatment of his disease, and that it was not solely for his convenience or the convenience of his family or provider, were final. (<u>See id.</u>). Plaintiff argues that he "rightfully did not appeal . . . medical necessity factors . . . which were no longer in dispute" on subsequent reviews. (<u>Id.</u>). Department of Labor regulations, however, specify that claims procedures must "provide for a review that does not afford deference to the initial adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(3)(ii). Even though Minogue decided in plaintiff's favor on several issues, he ultimately denied the claim, making his decision an "adverse benefit determination" within the meaning of the regulation. Goldin's decision was likewise adverse to plaintiff's interests. The court therefore interprets Department of Labor regulations to sanction defendant Blue Cross's de novo adjudication of plaintiff's claim each time it was appealed. Plaintiff has pointed to no provision of the plan, statute, regulation, or case that conflicts with this interpretation of the regulations governing ERISA.

The court incorporates its previous finding that defendant Blue Cross did not have a conflict of interest where no material facts that would change its previous analysis have been offered. While "[t]his factor weighs in favor of finding that defendant did not abuse its discretion, . . . it fails to outweigh the above-analyzed factors indicative of an abuse of discretion." (Order at 35).

e.     Balancing the Factors

As before, all the relevant factors save one weigh in favor of determining theat defendant Blue Cross abused its discretion in denying plaintiff's claim. Defendant Blue Cross misapplied the language of the plan, at times replicating the errors the court corrected previously. Further, its decisions at each level, while reaching the same result, either used methods of evaluating evidence that were dramatically inconsistent or altogether failed to evaluate the evidence. While there "is no indication that its decision resulted from a conflict of interest . . . , the absence of an evidenced conflict of interest does not outweigh what, on the undisputed administrative record, was otherwise an unprincipled and arbitrary decision to deny plaintiff's claim." (Order at 37).

Accordingly, the court grants plaintiff's motion for summary judgment and denies defendants' motions.

2.     Appropriate Remedy

As noted in this court's first summary judgment order, "in many instances, remand is the appropriate remedy." Helton, 709 F.3d at 339. "But remand is not required in all instances, particularly where evidence shows that the administrator abused its discretion." Garner v. Central States, Southeast and Southwest Areas Health and Welfare Fund Active Plan, 31 F.4th 854, 860 (4th Cir. 2022). "In cases where the fiduciary has committed a clear error . . . , a reversal, rather than a remand [is] within the discretion of the district court." Id.

The court has already remanded this case to defendant Blue Cross once before, and defendant's reviewers again failed to provide plaintiff with a principled, reasoned decisionmaking process, exhibiting "many of the same deficiencies noted previously." See Wiwel v. IBM Medical and Dental Plans, No. 5:15-cv-504, 2018 WL 1146771 at *4 (E.D.N.C. Feb. 5, 2018). While the court does not come to any conclusion of bad faith, defendant Blue Cross has repeatedly failed "to give [plaintiff's] claim the reasoned consideration it deserved." Garner, 31 F.4th at 860. Accordingly, the court finds that remand is inappropriate where defendant Blue Cross has already had "ample chance to review [plaintiff's] claim," and plaintiff is entitled to health insurance benefits covering his proton therapy treatment.

In addition to an award of benefits, plaintiff also seeks prejudgment interest. "ERISA does not specifically provide for prejudgment interest, and absent a statutory mandate the award of prejudgment interest is discretionary with the trial court." Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1030 (4th Cir. 1993). Additionally, where ERISA does not mandate a specific rate of prejudgment interest, the trial court may set the rate at the level established by statute in the state in which it sits. See id.; see, e.g., Duperry v. Life Insurance Company of North America, No. 5:08-cv-334-FL, 2009 WL 10681745, at *3 (E.D.N.C. Dec. 23, 2009), aff'd 632 F.3d 860 (4th Cir. 2011) (finding the state statutory interest rate to be an appropriate rate for prejudgment interest). Therefore, in its discretion, the court adheres to the North Carolina legal rate of interest, eight percent (8%) per annum. At 8% per annum, prejudgment interest on principal amount $109,000.00 accrues at a rate of $23.89 per day.

Nevertheless, the court is unable to determine the date on which interest began to accrue where the purpose of prejudgment interest is to "restor[e] the injured party to the condition it enjoyed before the injury occurred[,]" City of Milwaukee v. Cement Division, National Gypsum

22

Company, et al., 515 U.S. 189, 196 (1995), and plaintiff does not disclose in the record the date he completed payment for the treatment upon which his claim for benefits is based. Accordingly, the court defers entry of that part of the court's judgment pertaining to prejudgment interest. Plaintiff is DIRECTED to file, within 14 days of the date of this order, a supplemental notice accompanied by evidence pertinent to an award of pre-judgment interest. Defendants may file a response, if any, within 21 days of filing thereof, and plaintiff may file a reply, if any, within 14 days of any response. Thereupon, the court will enter such further order as is warranted regarding prejudgment interest.

In sum, the court grants plaintiff's motion for summary judgment, denies defendants' motions for summary judgment, reverses defendants' denial of benefits to plaintiff, awards benefits to plaintiff in the amount of $109,000.00, and defers ruling on prejudgment interest.

B.    Motion for Attorneys' Fees and Costs

In its first summary judgment order, in response to plaintiff's argument that he should be awarded fees and costs, the court directed plaintiff to file briefing and documentation in support or, in the alternative, to file a request for a stay of consideration of fees and costs pending resolution of his claim on remand. (See Order at 40). Plaintiff filed the instant motion for attorneys' fees and costs, on April 12, 2022, relying on declarations by Elizabeth K. Green, Timothy J. Rozelle, Norris A. Adams, II, Maria D. Garcia, Stephanie A. Casey, and Amar Raval, and statements of costs, timesheets, and invoices. (DE 130, 131). Following plaintiff's filings, defendant Blue Cross denied plaintiff's claim on remand and the parties filed the instant cross-motions for summary judgment.

Plaintiff's filings cover legal services rendered through April 2022, (see, e.g., DE 130-2 at 19; DE 130-4 at 29); however, counsel for the plaintiff has now rendered legal services through at

least October 2022. (See, e.g., DE 168). Accordingly, plaintiff's motion for attorney's fees and costs is denied without prejudice to renewed filing in light of this court's instant decision on the parties' renewed summary judgment motions. Plaintiff is directed to file, within 14 days of the date of this order, a renewed motion for attorneys' fees and costs with supporting memorandum and documentation. Defendants may file a response, if any, within 21 days of filing thereof, and plaintiff may file a reply, if any, within 14 days of any response. Thereupon, the court will enter such further order as is warranted regarding attorneys' fees and costs.

## CONCLUSION

Based on the foregoing, defendants' motions for summary judgment (DE 152, 158) are DENIED, and plaintiff's motion for summary judgment (DE 155) is GRANTED. Plaintiff's motion for attorneys' fees (DE 130) is DENIED without prejudice. Plaintiff is awarded benefits in the amount of $109,000.00. The clerk is DIRECTED to enter partial judgment in favor of plaintiff on plaintiff's award of benefits as determined herein, pursuant to Rule 54(b). The court defers entry of judgment(s) on attorneys' fees, costs, and prejudgment interest, pending further order of the court following filing of supplemental notice on prejudgment interest and renewed motion for attorneys' fees and costs, if any, as set forth herein.

SO ORDERED, this the 27th day of March, 2023.


LOUISE W. FLANAGAN
United States District Judge